THE PEOPLE OF THE STATE OF NEW YORK ex rel. LEO SORMBERGER, Relator, against WALTER B. MARTIN, Warden of Clinton Prison, Dannemora, N. Y., Respondent.

County Court, Clinton County, March 2, 1943.

*Leo Sormberger* in person, relator.

*Nathaniel L. Goldstein, Attorney-General (Robert C. Booth* of counsel), for respondent.

RYAN, J. The relator, Leo Sormberger, an inmate of Clinton Prison at Dannemora, New York, was before this court upon the return of a writ of habeas corpus in September, 1942. Though the writ was dismissed and the relator remanded to custody for the reason that at that time the maximum term of his sentence had not expired, the court ordered the Prison Board, provided for in section 235 of the Correction Law, to submit the relator's name to the Governor as required by section 232

of the Correction Law. From this order the People have appealed, and that appeal is now pending. (266 App. Div. 48.)

The relator is again before this court upon a writ of habeas corpus, and, applying the same reasoning that guided this court's decision upon the previous application, the court is constrained to hold that the maximum term of the relator's sentence has now expired, and that he is entitled to be discharged from custody.

Leo Sormberger was convicted in Albany county in 1923 and was sentenced to Clinton Prison for an indeterminate term, the minimum of which was ten years and the maximum of which was fifteen years. He entered prison on March 7, 1923, and was allowed credit on his sentence of four months and twenty-seven days jail time, provided for in section 2193 of the Penal Law. He remained in prison until May 9, 1930, when he was released on parole pursuant to the provisions of section 214 of the Prison Law, which provided as follows: " If it shall appear to said board of parole for state prisons, upon an application by a convict for release on parole as hereinbefore provided, that there is reasonable probability that such applicant will live and remain at liberty without violating the law, then said board may authorize the release of such applicant upon parole, and such applicant shall thereupon be allowed to go upon parole outside of said prison walls and inclosure upon such terms and conditions as said board shall prescribe, but to remain, while so on parole, in the legal custody and under the control of the agent and warden of the state prison from which he is paroled, until the expiration of the maximum term specified in his sentence as hereinbefore provided, or until his absolute discharge as hereinafter provided."

His conviction having occurred prior to 1929, he was subject to the provisions of the Prison Law in effect as of the date of his conviction. (*People ex rel. Madden* v. *Barr,* 143 Misc. 716, 719, revd. on other ground, 236 App. Div. 319, affd. 260 N. Y. 581.) " It is to be noted that the rights of the relators cannot be measured by the provisions of the Correction Law, adopted in 1929 (Laws of 1929, chap. 243), which re-enacted the whole of article 8 of the Prison Law. * * * The relators were all convicted and sentenced prior to July 1, 1928. Obviously, the statute applying to them is the Prison Law as it existed before that date * * *."

Prior to the relator's release on parole, and on or about the 25th day of April, 1930, he signed a parole agreement supplied by the Parole Board. This agreement provided, among other

matters, the following: " This parole is granted under condition that if the above named person shall during the period of his release by reason thereof, and the date of the expiration of the maximum term for which he was sentenced, be convicted of any felony and committed in the interval as aforesaid, he shall, in addition to the sentence which may be imposed for such felony, and before beginning the service of such sentence, be compelled to serve in the prison or pententiary in which he may be confined for the felony for which he is so convicted, the remainder of the maximum term of his sentence, without commutation, unless sooner released on parole or absolute discharge by the Board of Parole of the state prisons, but he may however, earn compensation in reduction of the remainder of such term."

The relator remained at liberty on parole from May 9, 1930, until October 6, 1933, when he was returned to prison for the assigned reason that he " has violated his parole and has lapsed, or is probably about to lapse into criminal ways or company." There is no charge or allegation that the relator was convicted of a felony during the period he was at liberty on parole. His return to prison was pursuant to the authority vested in the Parole Board under section 217 of the Prison Law. He was held in prison until November 21, 1934, when he was again released on parole.

On November 20, 1934, the relator signed a second parole agreement provided by the Parole Board. This agreement provided in Paragraph (7) as follows: " Should I, during the period during which I am on parole, be convicted of a felony within this State, I understand that before beginning to serve the sentence pronounced upon me for this offense, I shall be compelled to serve in a State Penal institution the portion remaining of the maximum term of the sentence on which I was released on parole from the time of such release on parole to the expiration of such maximum." This agreement further specified the expiration date of the relator's maximum sentence to be February 2, 1938.

It is obvious that as of November 21, 1934, the relator was credited with having served eleven years, nine months, and nineteen days of his maximum sentence; there remaining of his maximum sentence three years, two months, and eleven days.

As of May 9, 1930, the relator had served seven years, six months, and twenty-nine days of his sentence, including the time spent in the Albany county jail prior to his conviction. He was

at liberty on parole "   *   *   *   outside of said prison walls and inclosure   *   *   *   in the legal custody and under the control of the agent and warden " (Prison Law, § 214), for a period of three years, one month, and four days. He was thereafter confined in prison from October 6, 1933, to November 21, 1934, a period of one year, one month, fifteen days. He had served eleven years, nine months, and nineteen days of his maximum sentence either in prison or on parole, and received credit for serving all of this time by the Department of Correction. It was upon the basis of this computation that February 2, 1938, was arrived at as the expiration date of the relator's maximum sentence, as set forth in the second parole agreement signed by the inmate prior to his release on parole.

On January 22, 1935, the relator was returned to prison, having been convicted of a felony in Rensselaer county, for which he received a definite sentence of five years in prison. On this sentence he is entitled to thirty-one days' jail time as provided for in section 1293 of the Penal Law. Therefore, upon his return to prison on January 22, 1935, he owed three years, two months, and eleven days on his 1923 conviction, and four years, ten months, and twenty-nine days on his 1935 conviction, or a total of eight years, one month, and ten days maximum time on both sentences.

The contention of the State is that the Parole Board has the authority to require the relator to serve not only the maximum of his sentence remaining as of November 21, 1934, but also the time that the relator was on parole from May 9, 1930, to June 13, 1933, the date upon which he was declared delinquent. It is conceded that the relator was convicted of no felony while at liberty during his first parole. He was reincarcerated by the Parole Board simply because that Board, in the exercise of the discretionary power reposed in it by law, determined that he " has violated his parole, and has lapsed or is probably about to lapse into criminal ways or company." Under the provisions of section 217 of the Prison Law, which governed and limited the action of the Parole Board upon the relator's return to prison, he was deprived of the time beginning from the date he was declared delinquent until his return to prison, a period of three months, twenty-three days. Section 217 of the Prison Law provides: "   *   *   *   he shall whenever arrested by virtue of such warrant be thereafter imprisoned in said prison for a period equal to the unexpired maximum term of sentence of such prisoner, at the time such delinquency is declared *   *   *.''

The expiration date of the relator's maximum sentence, to wit, February 2, 1938, was not a date arbitrarily fixed by the Parole Board. It was a date that could neither be advanced nor retarded by any authority vested in the Parole Board, and could be affected only by the conduct of the relator himself, or as provided for in the parole agreement which he signed and section 219 of the Prison Law (now section 219 of the Correction Law): " If any prisoner be convicted in this state of a felony committed while on parole from a state prison or from the Elmira reformatory he shall, in addition to the sentence which may be imposed for such felony, and before beginning to serve such sentence, be compelled to serve in state's prison the portion remaining of the maximum term of the sentence on which he was released on parole from the time of such release on parole to the expiration of such maximum  *   *   *."

The wording of the statute is identical with the phraseology contained in the parole agreement: " from the time of such release on parole to the expiration of such maximum."

To hold with the State's contention, a literal interpretation of the above would require that the relator serve all of the time dating from May 9, 1930, including the period from October 6, 1933, to November 21, 1934, spent in prison.

To resolve this question in favor of the State would require the court to read into the parole agreement and into section 219 of the Prison Law something that obviously is not there.

The relator at the time of his release on parole on November 21, 1934, owed on his maximum sentence three years, two months, and eleven days. If, prior to February 2, 1938, he was convicted of a felony, he would by law be required to first serve this time before beginning the sentence imposed for the felony. He began serving this time on January 22, 1935. Since that date he has served in prison eight years, one month, and ten days. He has served not only the full maximum of three years, two months, and eleven days on his original sentence, but has also served the full maximum of the five-year sentence imposed for the felony of which he was convicted. He has paid his full debt to society for his crimes, and I order his discharge forthwith.